UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 7 |
| INGRIDA PADLECKYTE, | ) | |
| | ) | |
| DEBTOR. | ) | CASE NO. 19-31841 |
| | ) | |
| PATRICK S. LAYNG, | ) | |
| UNITED STATES TRUSTEE | ) | ADVERSARY NO. 20 A |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | JUDGE TIMOTHY A. BARNES |
| vs. | ) | |
| | ) | |
| INGRIDA PADLECKYTE, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE

NOW comes Patrick S. Layng, the United States Trustee for the Northern District of Illinois, by his attorney, Jeffrey L. Gansberg, and for his Complaint Objecting to Debtor's Discharge states:

### JURISDICTION

1.      Plaintiff is the U.S. Trustee and files this proceeding pursuant to the authority granted to him in Title 11, Section 727(c)(1) of the United States Code.

2.      Venue of this proceeding is in the United States District Court for the Northern District of Illinois under Title 28, Section 1409(a) of the United States Code.

3.      This Court has jurisdiction to hear and determine this complaint under Title 28, Section 157(b)(2)(J) of the United States Code, LR 40.3.1 and IOP 15A of the United States District Court for the Northern District of Illinois and if it is deemed to be non-core, Plaintiff consents to entry of a final judgment by the Bankruptcy Court.

## BACKGROUND

4.       On November 7, 2019 (the "**Petition Date**"), Ingrida Padlecktye (the "**Debtor**"),

through her attorney, filed her voluntary petition for relief pursuant to chapter 7 of the

Bankruptcy Code along with Schedules A/B, C, D, E/F, G, H, I, and J (collectively the

"Schedules") and a Statement of Financial Affairs (the "SOFA").  Copies of her Petition,

Schedules, and SOFA are attached as **Exhibit A**.

           The Debtor's Petition and Schedules are Materially False

5.       In response to question 4 on the Petition, the Debtor indicated that she has not

used any business name or Employer Identification Numbers (EIN) in the last 8 years.  *See*

Petition (Exhibit A).

6.       In response to question 12 on the Petition, the Debtor indicated that she was not a

sole proprietor of any full or part-time business.  *See* Petition (Exhibit A)

           The Debtor's Schedules are Materially False

7.       In her Schedules, the Debtor made representations about her financial condition,

including about her assets and liabilities.  *See generally*, Schedules (Exhibit A).

8.       These representations were made under penalty of perjury.

9.       Specifically, the Debtor represented, under penalty of perjury, that she did not

own or possess any electronics.  *See* Schedule A/B, question 7.  (Exhibit A).

10.      Specifically, the Debtor represented, under penalty of perjury, that she did not

own or possess any jewelry.  *See* Schedule A/B, question 12.  (Exhibit A).

11.      Specifically, the Debtor represented, under penalty of perjury, that she did not

own or possess any deposits of money.  *See* Schedule A/B, question 17.  (Exhibit A).

12.      Specifically, the Debtor represented, under penalty of perjury, that she did not

own or possess any non-publicly traded stocks or interests in incorporated and unincorporated

2

business, including an interest in an LLC, partnership, and joint venture.  *See* Schedule A/B, question 19.  (Exhibit A).

13.    The Debtor also indicated that she owned a 2015 Lexus GX460 with a value of approximately $25,000 that was encumbered with a lien against it totaling $39,105.  *See* Schedule D.  (Exhibit A).

14.    The Debtor failed to schedule either Mountain Cupcakes LLC or Lauren Smith as creditors although they jointly had initiated an arbitration against her and Posh Joint 23, LLC.

15.    The Debtor's Schedules I and J are not correct as filed.

16.    On Schedule I, the Debtor indicated that she has no income from any source.  *See* Schedule I.  (Exhibit A).

17.    The Debtor also indicated that she did not expect any increase in her income in the year following the Petition Date.

18.    The Debtor indicated that she is married and that her spouse is employed.

19.    The Debtor further indicated that while her spouse was employed, she disclosed his monthly income as $0.  *See* Schedule I.  (Exhibit A).

20.    On her Schedule J, the Debtor made certain representations about her monthly expenses.  *See generally*, Schedule J.  (Exhibit A).

21.    In fact, on Schedule J, the Debtor disclosed expenses for only five categories.

22.    The Debtor disclosed monthly food and housekeeping supplies in the amount of $200.  *See* Schedule J, line 7.  (Exhibit A).

23.    The Debtor disclosed monthly clothing, laundry, and dry cleaning in the amount of $50.  *Id.,* line 9.  (Exhibit A).

3

24.     The Debtor disclosed monthly personal care products and services in the amount of $50. *Id.,* line 10. (Exhibit A).

25.     The Debtor disclosed monthly transportation in the amount of $200. *Id.* line 12. (Exhibit A).

26.     The Debtor disclosed monthly vehicle insurance in the amount of $100. *Id.* line 15c. (Exhibit A).

27.     The Debtor appears to have omitted certain expenses from her Schedule J. *Id.* (Exhibit A)

28.     Despite indicating that she owes $39,105 on a vehicle loan (*see* Schedule D) (Exhibit A), other than vehicle insurance, the Debtor failed to include any related expense on Schedule J. *See* Schedule J. (Exhibit A).

29.     Specifically, the Debtor failed to include a monthly payment obligation on account of the vehicle. *See* Schedule J at line 17a. (Exhibit A).

30.     The Debtor completed Form 106DEC and indicated that "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and they are true and correct." *See* Form 106Dec. [Dkt No. 1]

The Debtor's Statement of Financial Affairs is Materially False

31.     The Debtor filed her SOFA on the Petition Date along with her Schedules.

32.     And, like her Schedules, the Debtor filed her SOFA under the penalty of perjury. *See* Official Form 107 [Dkt No. 1]

**Question 4 of the Statement of Financial Affairs**

33.     Question four of the Debtor's SOFA required her to state her gross income for 2019 and the two previous years (2017 and 2018). *See* SOFA at question 4. (Exhibit A).

34.   In response to question four the Debtor indicated that she earned no money from employment or from operating a business in 2019 or during the two previous calendar years (2018 and 2017).  *See* Statement of Financial Affairs at question 4.  (Exhibit A).

35.   The Debtor's response to question four was untrue.

36.   During 2018, Debtor was employed by Mario Tricoci Hair Salons – Day Spas Inc. and earned gross wages of $2,818.69.  *See* Form W-2 attached hereto as **Exhibit B (redacted)**.

37.   Not only did the Debtor earn wages from Mario Tricoci during 2018, but on her 2018 tax return the Debtor admits that she had two additional sources of income during 2018: (i) the Subchapter S corporation she owned called Crepe Avenue Inc. ("**Crepe Ave.**") and (ii) income from a sole proprietorship as a care giver. *See* 2018 Income Tax Return attached hereto as **Exhibit C (redacted)**.

38.   Similarly, her 2017 tax return indicates that she had income in that year too. *See* 2017 Income Tax Return attached hereto as **Exhibit D (redacted).**

39.   Specifically, the Debtor earned income from: (i) a sole proprietorship as a care giver; and (ii) as a hairdresser at Mario Tricocci.  *Id.*

40.   Upon information and belief, the Debtor also had income from Crepe Ave. during 2017.

**Question 18 of the Statement of Financial Affairs**

41.   Question eighteen of the Debtor's SOFA required the Debtor to indicate if, within the two years before she filed for bankruptcy, she transferred property to anyone outside of the ordinary course of business.  *See* SOFA at Question 18.  (Exhibit A).

42.   The Debtor's response was "No."  *See* SOFA at Question 18.  (Exhibit A).

43.     However, the Debtor's response is contradicted by an affidavit that she produced to the U.S. Trustee in connection with a Rule 2004 discovery response.  *See* Affidavit of Ingrida Padleckyte (the "**Affidavit**") attached as **Exhibit E.**

44.     In the Affidavit, the Debtor admitted that she transferred assets by leaving them in the space Crepe Ave. used to conduct business so that those assets could be used by the new entity operating in that same space.  *See* Affidavit at ¶ H.

45.     According to Crepe Ave.'s 2018 tax return, and K-1, Crepe Ave. was a Subchapter S corporation wholly owned by the Debtor.

46.     Crepe Ave. ceased operating in June 2019.  *See* SOFA at Question 27.  (Exhibit A).

47.     When Crepe Ave. ceased operations, it was required to wind-up its business under Illinois state law.

48.     Crepe Ave.'s wind-up should have included paying creditors from the proceeds of its remaining assets.

49.     Only after creditors had been paid would the remaining assets of Crepe Ave. been disbursed to the Debtor on account of her equity interest.

50.     Based on the Affidavit, there were assets of Crepe Ave. that remained.

51.     Whether the Debtor properly wound down Crepe Ave. or not, she chose to leave Crepe Ave.'s equipment in the space where it operated for the  benefit of and use by the new business operating in the same space as Crepe Ave.

52.     The tenant that took over the space abandoned by Crepe Ave. was Crepe Ave. 1 Inc. ("**Crepe Ave. 1**").

53.     Based upon records maintained by the Illinois Secretary of State, Crepe Ave. 1 was formed on July 23, 2019.

54.     Crepe Ave. 1 is owned and operated by Vladan Vujadinovic ("**Dan**").  *See* Secretary of State printout, attached at **Exhibit F**.

55.     Dan is the Debtor's husband.  *See* Dan's Affidavit and Marriage Certificate attached hereto as **Exhibit G.**

56.      Crepe Ave. 1 engages in the same business that Crepe Ave. was engaged, which is operating a creperie in a tollway oasis.

57.     By abandoning the equipment, the Debtor effectively transferred equipment to her husband.

58.     On Crepe Ave.'s 2018 Tax Return, Crepe Ave. indicated that it had equipment worth $26,041, which was fully depreciated.

59.     Although fully depreciated, Crepe Ave.'s equipment was not valueless, as it enabled Crepe Ave. 1 to operate as a going concern.

**Question 20 of the Statement of Financial Affairs**

60.     Question twenty of the SOFA required the Debtor to indicate whether within the year prior to filing for bankruptcy protection, she closed, moved or transferred any financial accounts that she owned in which she held an interest.  *See* SOFA at question 20.  (Exhibit A).

61.     The Debtor indicated that no account that she owned or in which she held an interest was closed within the past year.  *See Id.*  (Exhibit A).

62.     The Debtor's statement in response to Question 20 on the SOFA was untrue.

7

63.    The Debtor used Crepe Ave.'s bank account at Republic Bank ending in the four digits "6836" (the "**Republic Bank Account**") as her own personal bank account during the year prior to the Petition Date. *See* Account Agreement attached hereto as **Exhibit H**.

64.    The Republic Bank Account was closed in September 2019, within a year prior to the Debtor's bankruptcy case.  *See* Exhibit I (UST – 00861).

65.    While the account was open, the Debtor treated the Republic Bank Account as her own and paid her personal credit card bills and other personal expenses using that account.

66.    The Debtor's use of the Republic Bank Account to pay her personal expenses as and when she saw fit evidences an equitable interest in the account.

67.    That equitable interest in the account constitutes the Debtor's property within the meaning of 11 U.S.C. 541(a).

The Debtor's Personal Use of the Republic Bank Account

68.    The Debtor held numerous personal credit cards.

69.    The Debtor held a personal American Express card (account ending in -1006).

70.    The Debtor did not list American Express card ending in -1006 on her Schedule E/F, although it had a balance as of the Petition Date.  *See* Schedule E/F.  (Exhibit A).

71.    The Debtor held a personal American Express card (account ending in -1005).

72.    The Debtor did not list American Express card ending in -1005 on her Schedule E/F, although it had a balance as of the Petition Date.  *Id*.  (Exhibit A).

73.    The Debtor's spouse was an authorized user of the American Express card ending in -1005 and used the card to incur charges.

74.    The Debtor held a personal Capital One card (account ending in -4044).

75.    The Debtor held a personal Chase card (account ending in -7893).

76.     The Debtor held a personal Chase card (account ending in -5748).

77.     The Debtor held a personal Discover Card (account ending in -8631)

(collectively, with the American Express card, the Capital One card, and the Chase cards, the

"**Personal Credit Cards**").

78.     The Debtor also held a corporate credit card in the name of Crepe Ave. – an

American Express card with an account ending in -1002.

79.     The Debtor used the Republic Bank Account to pay charges made on the Personal

Credit Cards.

80.     A sampling of those payments follows but is not intended to be a recitation of

every transfer made from the Republic Bank Account to satisfy the Debtor's personal obligations

or the obligations of other entities owned by the Debtor.

81.     As reflected on the Republic Bank Account statement for the period ending

November 30, 2018, on November 13, 2018, the Debtor made a payment of $3,193.38 on her

personal Chase card ending in -7893 from the Republic Bank Account.  *See* Exhibit J (UST –

00759).

82.     The payment is reflected on the Chase card statement as being made on

November 12, 2018.  *See* Exhibit K (UST – 00344).

83.     As reflected on the Republic Bank Account statement for the period ending

November 30, 2018, on November 29, 2018, the Debtor made a payment of $4,696.10 on her

American Express card ending in -1005.  *See* Exhibit J (UST – 00760).

84.     The payment is reflected on the American Express card statement as being made

on November 28, 2018.  *See* Exhibit L (UST – 00088).

85.     As reflected on the Republic Bank Account statement for the period ending December 31, 2018, on December 10, 2018, the Debtor made a payment of $90.00 on her Chase card ending in –7893.  *See* Exhibit M (UST – 00767).

86.     The payment is reflected on the Chase statement as being made on December 8, 2018.  *See* Exhibit K (UST – 00348).

87.     As reflected on the Republic Bank Account statement for the period ending December 31, 2018, on December 24, 2018, the Debtor made a payment of $191.00 on her Discover Card ending in -- 8631.  *See* Exhibit M (UST – 00769).

88.     The payment is reflected on the Discover Card statement as being made on December 20, 2018.  *See* Exhibit N (UST – 00432).

89.     As reflected on the Republic Bank Account statement for the period ending December 31, 2018, on December 27, 2018 the Debtor made a payment of $1,722.90 on her Capital One card ending in -4044.  *See* Exhibit M (UST – 00770).

90.     The payment is reflected on the Capital One statement as being made on December 25, 2018.  *See* Exhibit O (UST – 00246).

91.     As reflected on the Republic Bank Account statement for the period ending December 31, 2018, on December 31, 2018 the Debtor made a payment of $14,923.63 on her American Express card ending in -1005.  *See* Exhibit M (UST – 00770).

92.     The payment is reflected on the American Express statement as being made on December 30, 2018.  *See* Exhibit P (UST – 00096).

93.     As reflected on the Republic Bank Account statement for the period ending January 31, 2019, on January 14, 2019, the Debtor made a payment of $143.00 on her Chase card ending in -7893.  *See* Exhibit Q (UST – 00778).

94.     The payment is reflected on the Chase statement as being made on January 11, 2019.  *See* Exhibit R (UST – 00352).

95.     As reflected on the Republic Bank Account statement for the period ending January 31, 2019, on January 23, 2019, the Debtor made a payment of $177.31 on her Discover Card.  *See* Exhibit Q (UST – 00780).

96.     The payment is reflected on the Discover Card statement as being made on January 20, 2019.  *See* Exhibit S (UST – 00436).

97.     As reflected on the Republic Bank Account statement for the period ending July 31, 2019, on July 12, 2019, the Debtor made a payment of $370.00 on her personal American Express card ending in -1005.  *See* Exhibit T (UST – 00847).

98.     The payment is reflected on the American Express card statement as being made on July 11, 2019.  *See* Exhibit U (UST – 0142).

99.     As reflected on the Republic Bank Account statement for the period ending July 31, 2019, on July 15, 2019, the Debtor made a payment of $249.00 on her Chase card ending in -7893.  *See* Exhibit T (UST – 00848).

100.    The payment is reflected on the Chase statement as being made on July 12, 2019. *See* Exhibit V (UST -- 00376).

101.    As reflected on the Republic Bank Account statement for the period ending July 31, 2019, on July 22, 2019, the Debtor made a payment of $346.00 on her Discover Card.  *See* Exhibit T (UST – 00849).

102.    The payment is reflected on the Discover Card statement as being made on July 20, 2019.  *See* Exhibit W (UST – 00462).

11

103.    As reflected on the Republic Bank Account statement for the period ending July 31, 2019, on July 22, 2019, the Debtor made a payment of $249.00 on her Chase card ending in -7893.  *See* Exhibit T (UST – 00849).

104.    The payment is reflected on the Chase statement as being made on July 18, 2019. *See* Exhibit X (UST – 00412).

105.    The third payment made by the Debtor on her Personal Credit Card on July 22, 2019, as reflected on the Republic Bank Account statement for the period ending July 31, 2019, is a payment in the amount of $180 on account of her Capital One card.  *See* Exhibit T (UST – 00849).

106.    The payment is reflected on the Capital One statement as being made July 20, 2019.  *See* Exhibit Y (UST – 00274).

107.    As reflected on the Republic Bank Account statement for the period ending August 31, 2019, on August 12, 2019, the Debtor made a payment of $370.00 on her American Express card.  *See* Exhibit Z (UST – 00855).

108.    The payment is reflected on the American Express statement as being made on August 11, 2019.  *See* Exhibit AA (UST – 00146).

The Funds Used for Other Personal Expenses or Obligations

109.    In addition to making payments against charges made on the Personal Credit Cards, the Debtor paid other personal obligations from the Republic Bank account.

110.    Again, as with the Personal Credit Card payments, these payments are not intended to reflect every personal payment made the by the Debtor from the Republic Bank Account but are intended to show that she used the Republic Bank Account as her personal bank account.

111.    On December 4, 2018, the Debtor withdrew $800.00 from the Republic Bank Account for a payment to Toyota.  *See* Exhibit M (UST – 00767).

112.    On December 6, 2018, the Debtor made a purchase of $50.00 at the "Altitude Club Vail CO" from the Republic Bank Account.  *See* Exhibit M (UST – 00767).

113.    The Debtor made numerous withdrawals from the Republic Bank Account in Colorado in December 2018 although Crepe Ave. was located at 700 E. Tri State Tollway (in the Tollway Oasis) in South Holland, IL.  *See* Republic Bank Statement for month ending December 31, 2018 at UST - 00766 – UST – 00770 (Exhibit M).

114.    The Debtor withdrew $503.50 from the Republic Bank account while at Alpine Bank in Vail, CO.  *See* Republic Bank Statement for period ending January 31, 2019 UST – 00779 (Exhibit Q).

115.    On February 7, 2019, the Debtor made another withdrawal while at Alpine Bank in Vail, CO.  *See* Republic Bank Statement for period ending February 28, 2019 UST – 00789 (Exhibit BB).

116.    The following day, February 8, 2019, the Debtor made a withdrawal in the amount of $302.50 in Avon, CO.  *See* Republic Bank Statement for period ending February 28, 2019 UST – 00789 (Exhibit BB).

117.    On February 19, 2019, the Debtor made three cash withdrawals from the Republic Bank Account.  *See* Republic Bank Statement for period ending February 28, 2019 UST – 00792 (Exhibit BB).

118.    The first cash withdrawal was in the amount of $400 and was made in Burbank, IL.  *Id*. (Exhibit BB).

119.    The second cash withdrawal was in the amount of $203.50 and was made in Hickory Hills, IL.  *See* Republic Bank Statement for period ending February 28, 2019 UST – 00789 (Exhibit BB).

120.    The third cash withdrawal was made in the same amount and at the same location as the second cash withdrawal -- $203.50 in Hickory Hills, IL.  *See* Republic Bank Statement for period ending February 28, 2019 UST – 00789 (Exhibit BB).

121.    The next day, February 20, 2019, the Debtor made a cash withdrawal in the amount of $500 in Palos Park, IL.  *See* Republic Bank Statement for period ending February 28, 2019 UST – 00793 (Exhibit BB).

122.    Two days later, February 22, 2019, the Debtor withdrew another $500.00 from the Republic Bank Account, this time in Hodgkins, IL.  *See* Republic Bank Statement for period ending February 28, 2019 UST – 00789 (Exhibit BB).

123.    Continuing the pattern, on February 26, 2019, the Debtor again withdrew $500 from the Republic Bank Account, this time from Palos Park, IL.  *See* Republic Bank Statement for period ending February 28, 2019 UST – 00789 (Exhibit BB).

124.    On February 28, 2019, a point of sale purchase was made at a Wal-Mart Super Center in Avon, CO.  *See* Republic Bank Statement for period ending February 28, 2019 UST – 00789 (Exhibit BB).

125.    Although the pattern of the Debtor paying her Personal Credit Card bills and otherwise using the Republic Bank Account as her own is becoming clear, her use of the account for personal expenses is pervasive.

126.    One March 4, 2019, the Republic Bank Account shows that the Debtor withdrew $403.00 in cash from the "terminal" at "5220 Fashion Outl Rosemont IL." *See* Republic Bank Statement for period ending March 31, 2019 UST – 00802 (Exhibit CC).

127.    It appears the withdrawal was made on March 2, 2019 – a Saturday. *Id.* (Exhibit CC).

128.    Continuing her personal use of the Republic Bank Account, on March 11, 2019, the Republic Bank statement indicates a point of sale purchase for "Quality Inn & Suites Wisconsin WI." *See* Republic Bank Statement for period ending March 31, 2019 UST – 00804 (Exhibit CC).

129.    The Republic Bank Statement indicates the charge was made on March 7, 2019. *Id.* (Exhibit CC).

130.    There is no reason that Crepe Ave. would require a stay at a Quality Inn & Suites in Wisconsin.

131.    The Republic Bank Statement indicates that on March 27, 2019, that $135.00 was spent at Victoria's Secret.  *See* Republic Bank Statement for period ending March 31, 2019 UST – 00808 (Exhibit CC).

132.    On May 23, 2019, the Debtor made a payment of $82.82 to "Great Lakes Student LN" from the Republic Account.  *See* Republic Bank Statement for period ending May 31, 2019 UST – 00827(Exhibit DD).

133.    On June 18, 2019, the Debtor made a $82.82 payment to "Great Lakes Student Ln."  *See* Republic Bank Statement for period ending June 30, 2019 UST – 00836 (Exhibit EE).

134.    On July 17, 2019, the Debtor made another payment of $82.82 to "Great Lakes Student Ln."  UST – 00848 (Exhibit T).

135.    And, on December 5, 2018, the Debtor wrote a $30,000 check to Mountain Cupcakes from the Crepe Ave. account. *See* Exhibit II (UST - 00870).

136.    A second check was made to Mountain Cupcakes on December 18, 2018, this one in the amount of $5,000. *See* Exhibit JJ (UST – 00872) .

137.    The same date, December 18, 2018, the Debtor wrote a third check from the Crepe Ave. bank account to Mountain Cupcakes. *See Id.* (Exhibit JJ).

138.    That check was written in the amount of $3,000. *Id.* (Exhibit JJ).

139.    The Debtor continued to issue checks for her benefit to Mountain Cupcakes from the Crepe Ave. account at Republic Bank.

140.    On January 13, 2019, the Debtor wrote a $3,500 check to Mountain Cupcakes from the Republic Bank Account. *See* Exhibit KK (UST – 00873).

141.    The $3,500 check was signed not by the Debtor, but by Dan, who had no interest in Crepe Ave. *Id.* (Exhibit KK).

142.    The $3,500 check memo line indicated that it was a loan to Mountain Cupcakes. *Id.* (Exhibit KK).

143.    On February 14, 2019, Dan made another loan check to Mountain Cupcakes from the Republic Bank Account. *Id.* (Exhibit KK).

144.    On that date, Dan drew check number 2003 on the Crepe Ave. account at Republic Bank in the amount of $6,394, for a short-term loan to Mountain Cupcakes. *Id.* (Exhibit KK).

145.    Loans were not the only way in which the Debtor used the Republic Bank Account for her personal benefit.

146.    On February 12, 2019, Dan made a check payable to Solaris Commercial Owner LLC.  *See* UST – 00873. (Exhibit KK).

147.    The memo line on check number 2003 indicates it was "Posh Joint Rent February 2019." *Id.* (Exhibit KK).

148.    SOFA, question 27, indicates that Posh Joint was a corporation owned by the Debtor.  *See* SOFA, question 27 (Exhibit A).

149.    The Debtor was using the Crepe Ave. bank account for her own benefit, including to pay rent for another entity that she owned.

150.    Check number 2002 was ultimately returned by Republic Bank and was not honored.  *See* Exhibit EE (UST – 00810).

**The Debtor's Responses to the Rule 2004 Examination Subpoena**

151.    On January 28, 2020, the U.S. Trustee received court authority to take a Rule 2004 examination of the Debtor.  [Dkt. 19]

152.    Accordingly, on January 31, 2020, the U.S. Trustee served the Debtor with a Rule 2004 examination subpoena.  A copy of the subpoena is attached hereto as **Exhibit LL**

153.    In response to the subpoena, the Debtor produced certain documents.

154.    Included with the Debtor's documents was an affidavit stating why she failed to produce certain documents requested by the subpoena.  *See* **Exhibit E.**

<u>The Debtor's Lack of Records Relating to her Ownership of and Obligations for Mountain Cupcakes</u>

155.    In December 2018, the Debtor invested in a business named Mountain Cupcakes. *See* Agreement for Purchase of Membership Interests (the "**Purchase Agreement**") attached hereto as **Exhibit MM.** (UST - 00727 - 00730).

156.     Pursuant to the Purchase Agreement, the Debtor purchased a 29% equity ownership in Mountain Cupcakes and agreed to purchase an additional 20% equity ownership interest in Mountain Cupcakes from the entity itself.  *See* Purchase Agreement at ¶ 3; *see also*, Written Consent of the Members of Mountain Cupcakes, LLC attached hereto as **Exhibit NN** (UST - 00733 - 00734).

157.     As part of her obligations under the Purchase Agreement, the Debtor was required to execute a personal guaranty of Mountain Cupcakes' obligations.  *See* Purchase Agreement at ¶ 3. (Exhibit MM).

158.     On December 5, 2018, the Debtor agreed to and did execute a Personal Guaranty for certain Mountain Cupcakes obligations, including those owed to: (i) Raisa Kuznetsova; (ii) Randall Smith; and (iii) Dennis Kuznetsov.  *See* Purchase Agreement at ¶ 3; *see also*, Personal Guaranty, a copy of which is attached hereto as **Exhibit OO.** (UST – 00731).

159.     Additionally, the Purchase Agreement required the Debtor to make a payment of $30,000 on or before the date of the Purchase Agreement – December 5, 2019.  *See* Purchase Agreement at ¶ 3 (Exhibit OO).

160.     The Debtor made that payment using funds from the Republic Bank Account.  *See* Republic Bank Statement for period ending December 31, 2018.  UST – 00766 (Exhibit CC); Check UST – 00870 (Exhibit II).

161.     The Purchase Agreement also provides that if the Debtor fulfilled her obligations under the Purchase Agreement, then Exhibit A to the operating agreement of Mountain Cupcakes would be amended.  *See*, Purchase Agreement at ¶ 3 (Exhibit MM).

162.     The amendment would memorialize her forty-nine percent (49%) interest in Mountain Cupcakes.

18

163.    The amendment was executed effective December 5, 2018.  *See*, Written Consent of the Members of Mountain Cupcakes, LLC. (Exhibit NN).

164.    In response to the Rule 2004 Examination subpoena issued to her, the Debtor indicated that she has no corporate or limited liability company documents for Mountain Cupcakes.  *See* Affidavit at ¶ C. (Exhibit E).

165.    The Debtor similarly swore that she "do[es] not have documents between myself and Randall Smith, Raisa Kuznetsova, Dennis Kuznetsov and any other person or entity evidencing indebtedness that I incurred to my investment with Mountain Cupcakes LLC."  *Id.* at ¶ F. (Exhibit E).

166.    The Debtor also failed to disclose in her Schedules or SOFA that Mountain Cupcakes and its other member, Lauren Smith, initiated arbitration against her.  *See*, SOFA, question 9 (Exhibit A).

167.    The arbitration was being administered by the American Arbitration Association in its Western Case Management Center.  *See* Packet of Limited Communication from American Arbitration Association attached hereto as **Group Exhibit PP.**  (UST - 01924 - 01925; UST – 01952 - 01953).

168.    The Debtor has no documents from which creditors can determine her financial position or business transactions involving Mountain Cupcakes and admits as much in her Affidavit.

Posh Joint 23, LLC

169.    In response to question 27 on the SOFA, the Debtor indicated that she owned Posh Joint 23 LLC.  *See* Question 27, SOFA (Exhibit A).

170.    The Debtor indicated that Posh Joint 23 LLC was in business for approximately

one month – April and May 2019.  *Id.* (Exhibit A).

171.    In the Rule 2004 subpoena issued to the Debtor, the U.S. Trustee requested

"Complete copies of all formation and other corporate or LLC documents, including drafts, for

Posh Joint 23 LLC including but not limited to its operating agreement and all amendments

thereto."  *See* Subpoena Rider at question 5 (Exhibit LL).

172.    The Debtor produced no documents responsive to that request.

173.    Instead, in her Affidavit, the Debtor swore that she does "not have any corporate

documents or LLC documents for Posh Joint 23 LLC."  Affidavit at ¶ D  (Exhibit E).

**COUNT I**
**11 U.S.C. §727(a)(2)**

174.    The U.S. Trustee restates and incorporates by reference the allegations contained

in paragraphs 1 - 173 of this Complaint.

175.    Section 727(a)(2) provides, "the court shall grant the debtor a discharge, unless –"

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer
> of the estate charged with custody of property under this title, has
> transferred, removed, destroyed, mutilated, or concealed, or has permitted
> to be transferred, removed, destroyed, mutilated, or concealed—
> (A) property of the debtor, within one year before the date of the filing of
> the petition; or
> (B) property of the estate, after the date of the filing of the petition;

11 U.S.C. §727(a)(2).

176.    The Debtor concealed her interest in and the existence of the Republic Bank

Account.

177.    The Debtor concealed her interest in and the existence of the Republic Bank

Account with the intent to hinder, delay, or defraud her creditors.

178.    The Debtor used the Republic Bank account as her own bank account as and when she saw fit.

179.    The Debtor paid personal expenses with the Republic Bank Account.

180.    The Debtor made her investment in Mountain Cupcakes using the Republic Bank account.

181.    The Debtor tried to use the Republic Bank account to pay rent for Posh Joint, LLC.

WHEREFORE, the U.S. Trustee respectfully requests the Court deny the Debtor her discharge pursuant to Section 727(a)(2) of the Bankruptcy Code and for such other relief as is equitable and just.

## COUNT II
## 11 U.S.C. § 727(a)(2)

182.    The U.S. Trustee restates and incorporates by reference the allegations contained in paragraphs 1 - 173 of this Complaint.

183.    Section 727(a)(2) provides, "the court shall grant the debtor a discharge, unless –"

the debtor, with intent to hinder, delay, or defraud a creditor or an officer
of the estate charged with custody of property under this title, has
transferred, removed, destroyed, mutilated, or concealed, or has permitted
to be transferred, removed, destroyed, mutilated, or concealed—
(A) property of the debtor, within one year before the date of the filing of
the petition; or
(B) property of the estate, after the date of the filing of the petition;
11 U.S.C. §727(a)(2).

184.    The Debtor concealed the transfer of equipment that she owned to Crepe Ave. 1.

185.    The Debtor did not take those assets when Crepe Ave. was wound down, instead leaving them for Dan, her husband, to use at his restaurant (Crepe Ave. 1).

186.    The Debtor received no consideration for the transfer of the assets.

187.    Crepe Ave. received no consideration for the transfer of the assets.

188.    Crepe Ave. 1 engages in the same business as Crepe Ave. engaged in when it was operating.

189.    The Debtor did not disclose the transfer of those assets to Crepe Ave. 1.

WHEREFORE, the U.S. Trustee respectfully requests the Court deny the Debtor her discharge pursuant to Section 727(a)(2) of the Bankruptcy Code and for such other relief as is equitable and just.

## COUNT III
## 11 U.S.C. § 727(a)(3)

190.    The U.S. Trustee restates and incorporates by reference the allegations contained in paragraphs 1 - 173 of this Complaint.

191.    Section 727(a)(3) provides that "the court shall grant the debtor a discharge, unless –"

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

11 U.S.C. §727(a)(3)

192.    "The purpose of § 727(a)(3) is to 'to make the privilege of a discharge dependent on a true presentation of the debtor's financial affairs.'" *See In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999) (citations omitted)(quotation marks omitted).

193.    In this case, the Debtor has failed to keep any records related to any of the businesses in which she was involved, Crepe Ave. Inc., Posh Joint 23 LLC, or Mountain Cupcakes.

194.     Similarly, the Debtor failed to keep any records related to the obligates she owed
to Randall Smith, Raisa Kuznetsova, and Dennis Kuznetsov arising from her guaranty of the
obligations of Mountain Cupcakes.

195.     Without this information, the chapter 7 trustee and the creditors are not able to
ascertain the Debtor's financial position.

196.     This failure includes the failure to produce financial statements for either Crepe
Ave. Inc. or Posh Joint 23 LLC.

197.     There is no fact justifying the Debtor's failure to maintain any records relating to
her aforementioned business interest.

WHEREFORE, the U.S. Trustee respectfully requests the Court deny the Debtor her
discharge pursuant to Section 727(a)(3) of the Bankruptcy Code and for such other relief as is
equitable and just.

## COUNT IV
## 11 U.S.C. § 727(a)(4)

198.     The U.S. Trustee restates and incorporates by reference the allegations contained
in paragraphs 1 - 173 of this Complaint.

199.     Section 727(a)(4) provides, "the court shall grant the debtor a discharge, unless –
"the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath
or account."11 U.S.C. § 727(a)(4)

200.     The Debtor made numerous false oaths or accounts in her bankruptcy case; these
representations are not the universe of her false statements and are only a sampling and others
may be identified during discovery and demonstrated at trial.

201.     Each statement is independent of the others and each, standing alone, can support
denial of the Debtor's discharge.

23

Document    Page 24 of 27

202.    These false oaths or accounts were contained in her Petition, Schedules, and SOFA and relate to her assets and liabilities.

203.    The Debtor's statements in her Petition, Schedules, and SOFA are made under oath.

204.    The Debtor made the representations knowingly or fraudulently.

205.    These representations include that she has had no income of any kind in 2017 through the petition date in 2019.

206.    These representations include that she had no interest in a checking account.

207.    These representations include that she had no non-publicly traded stocks and interests in incorporated and unincorporated businesses, including any interests in any LLCs, partnerships, and joint ventures.

208.    These representations include that she has no car payment although she indicated amounts due and owing on account of her automobile.

209.    These representations include that Dan has no income.

210.    If the statements were not made knowing and fraudulently, they were made with a "reckless disregard" for the truth, which will also support the denial of the Debtor's discharge. *Stamat v. Neary,* 635 F.3d 974, 982 (7th Cir. 2011).

WHEREFORE, the U.S. Trustee respectfully requests the Court deny the Debtor her discharge pursuant to Section 727(a)(4) of the Bankruptcy Code and for such other relief as is equitable and just.

## COUNT V
## 11 U.S.C. § 727(a)(4)

211.    The U.S. Trustee restates and reincorporates by reference the allegations contained in paragraphs 1 – 173 of this Complaint.

212.    Section 727(a)(4) provides, "the court shall grant the debtor a discharge, unless –
the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath
or account."  11 U.S.C. §727(a)(4)

213.    The Debtor made additional false oaths or accounts in addition to the ones above;
these representations are not the universe of her false statements and are only a sampling and
others may be identified during discovery and demonstrated at trial.

214.    Each statement is independent of the others and each, standing alone, can support
denial of the Debtor's discharge.

215.    These false oaths or accounts were contained in her Petition, Schedules, and
SOFA and relate to her assets and liabilities.

216.    The Debtor's statements in her Petition, Schedules, and SOFA are made under
oath.

217.    The Debtor made the representations knowingly or fraudulently.

218.    These representations include that she has not used any business name or
Employer Identification Numbers (EIN) in the last 8 years.  *See* Petition (Exhibit A).

219.    These representations include that she was not a sole proprietor of any full or part-
time business.  *See* Petition (Exhibit A).

220.    These representations include that she did not own or possess any electronics.  *See*
Schedule A/B, question 7 (Exhibit A).

221.    These representations include that she did not own or possess any jewelry.  *See*
Schedule A/B, question 12 (Exhibit A).

222.    These representations include that she did not own or possess any deposits of
money.  *See* Schedule A/B, question 17 (Exhibit A).

223.   If the statements were not made knowing and fraudulently, they were made with a "reckless disregard" for the truth, which will also support the denial of the Debtor's discharge. *Stamat v. Neary,* 635 F.3d 974, 982 (7th Cir. 2011).

WHEREFORE, the U.S. Trustee respectfully requests the Court deny the Debtor her discharge pursuant to Section 727(a)(4) of the Bankruptcy Code and for such other relief as is equitable and just.

### COUNT VI
### 11 U.S.C. § 727(a)(5)

224.   The U.S. Trustee restates and reincorporates by reference the allegations contained in paragraphs 1 – 173 of this Complaint.

225.   The Debtor has failed to explain her loss or deficiency of assets to meet her liabilities.

226.   The Debtor's Schedules indicate that she owes $230,386 in secured and unsecured debt.  *See* Summary of Your Assets and Liabilities and Certain Statistical Information (Official Form 106Sum) [Dkt. No 1]; *see also*, Schedules D, E/F (Exhibit A).

227.   Despite substantial debt, the Debtor indicates that she has only $25,570 in assets. *See* Your Assets and Liabilities and Certain Statistical Information (Official Form 106Sum) [Dkt. No 1]; *see also*, Schedules A/B (Exhibit A).

228.   Of the $25,570 in assets the Debtor swore she owns, $25,000 was a Lexus GX460 for which she states she owes $39,105.  *See* Schedule A/B; Schedule D (Exhibit A).

229.   Deducting the Debtor's value of the Lexus indicates that she owns only $570 in other assets.

230.   Additionally, she was able to obtain significant unsecured credit, credit which would not be available if she has no income and no assets.

231.    The Debtor cannot explain her lack of assets, or the dissipation of assets that she may have had prior to filing.

WHEREFORE, the U.S. Trustee respectfully requests the Court deny the Debtor her discharge pursuant to Section 727(a)(5) of the Bankruptcy Code and for such other relief as is equitable and just.

RESPECTFULLY SUBMITTED:

PATRICK S. LAYNG
UNITED STATES TRUSTEE


DATED: <u>September 11, 2020</u>                */s/ Jeffrey Gansberg*
                                                    Jeffrey Gansberg
                                                    Trial Attorney
                                                    U.S. Department of Justice
                                                    Office of the United States Trustee
                                                    219 S. Dearborn Street, Room 873
                                                    Chicago, Illinois 60604
                                                    (312) 886-3327